STATE OF INDIANA; JAMES O. MATHIS, COMMISSIONER OF REVENUE; LEE R. EADS, SHERIFF OF MARION COUNTY; AMERICAN FLETCHER NATIONAL BANK AND TRUST COMPANY; INDIANA NATIONAL BANK; MERCHANTS NATIONAL BANK AND TRUST COMPANY v. INDIANAPOLIS AIRPORT AUTHORITY.

[No. 1-1175A201. Filed May 5, 1977. Rehearing denied August 25, 1977. Transfer denied November 15, 1977.]

*Theodore L. Sendak,* Attorney General, *Joseph J. Reiswerg,* Deputy Attorney General, for appellants.

*Chalmer Schlosser, Jr., Schlosser, White & Schlosser,* of counsel, of Indianapolis, *George B. Gavit, G. Daniel Kelley, Jr., Ice Miller Donadio & Ryan,* of counsel, of Indianapolis, for appellee.

LYBROOK, J.—Defendants-appellants, State of Indiana; James O. Mathis, Commissioner of Revenue; and Lee R. Eads, Sheriff of Marion County, bring this appeal following the granting of a permanent injunction barring their attempt to tax plaintiff-appellee Indianapolis Airport Authority. (I.A.A.). The injunction also prohibited attachment or levy upon any assets of the I.A.A.

The facts most favorable to the judgment indicate that I.A.A. is the owner and operator of Weir Cook Airport. It also operates and maintains Indianapolis Metropolitan Airport in Hamilton County, Speedway Airport in Hendricks County and Eagle Creek Airport. The I.A.A. has total responsibility for the care, maintenance and safety of the above facilities.

Weir Cook Airport serves the entire State of Indiana and a small percentage of its patrons are from other States. The airport is supported by a combination of landing fees, parking fees, rental to airport tenants, gallonage fee on fuel sold, tax levy on Marion County taxpayers and additional Federal Funds which are provided on a matching basis to help maintain safety standards. The airport has not shown a profit in the last 12 years. The record indicates that all major airports are operated as units of government.

I.A.A. is a municipal corporation created pursuant to IC 1971, 19-6-2-1 *et seq.* (Burns Code Ed.). The record further indicates the total budget of the I.A.A. exceeds $5,000,000 annually, of which approximately $700,000 is expended for essential police and fire protection.

The record indicates that growth in air travel will necessitate a new runway costing $22,000,000, of which I.A.A. must supply $5,500,000. The collection of the demanded tax would reduce the funds available for expansion and thus result in loss of matching Federal funds. This loss in Federal funds would have the result of eventually overloading the airport facilities due to the lack of expansion of runways.

The uncontroverted evidence shows that I.A.A. was frequently audited by the State Board of Accounts and that no tax had ever been assessed against I.A.A. in spite of constant knowledge of its gross income from the years 1962 through 1968.

The State is attempting to assess I.A.A. with $252,067.94 in gross income tax retroactive to 1962. Included in that sum

are penalties and interest of $71,730.47. The defendants used this levy to freeze I.A.A.'s bank accounts and thus prevented payment to I.A.A.'s police and fire prevention staffs.

Upon the above facts the trial court held that I.A.A. was not a "person" subject to Indiana Gross Income Tax and issued an injunction barring further attachment of I.A.A. funds or assets.

The State presents the following alleged errors for review:

(1) Did the trial court have jurisdiction to hear the case and issue the injunction?

(2) Were the trial court's special findings of fact numbered 4, 5, 7, 9, 15 and 16 supported by sufficient evidence?

(3) Were the trial court's conclusions of law numbered 2, 3, 4 and 6 erroneous?

## I.

The State's challenge to the jurisdiction of the trial court is predicated on IC 1971, 6-2-1-19 (Burns Code Ed.) which, in pertinent part reads as follows:

"(d) No injunction to restrain or delay the collection of any tax claimed to be due under the provisions of this act shall be issued by any court, but in all cases in which, for any reason, it be claimed that any such tax about to be collected is wrongful or illegal in whole or in part, the remedy, except as otherwise expressly provided in this act, shall be by payment and action to recover such tax as provided in this section.".

The cases of *State ex rel. Indiana Dept. of Revenue* v. *Marion Circuit Court* (1970), 255 Ind. 501, 265 N.E.2d 241 and *Marhoefer Packing Co., Inc.* v. *Indiana Dept. of State Revenue* (1973), 157 Ind. App. 505, 301 N.E.2d 209, appear to say that payment and request for refund are the sole and exclusive remedies available to test the legality of an imposition of the Indiana Gross Income Tax.

A closer examination of the Gross Income Tax Act reveals one threshold which the State must cross before succeeding in the above argument. If I.A.A. is neither a "person" nor

a "taxpayer" the provision quoted above would not apply. IC 1971, 6-2-1-19 uses the terms "any person" or "any taxpayer" and the refund procedure applies only to such parties. *Mathis* v. *Cooperative Vendors, Inc.* (1976), 170 Ind. App. 659, 354 N.E.2d 269. Jurisdiction of the trial court is thus controlled by I.A.A.'s status in regard to being a "person" or "taxpayer".

The term person is synonomous with taxpayer and may be used interchangeably. *Mathis, supra.* See Burns Admin. Rules and Reg. IC 1971, (6-2-1-19)-1, instruction 1-1. The Indiana Legislature has provided the definition of "person" which is controlling in this case. IC 1971, 6-2-1-1 (Burns Code Ed.):

> "6-2-1-1 [64-2601]. Short title—Definitions.—This chapter [6-2-1-1—6-2-1-53] may be cited as the 'Gross Income Tax Act of 1933.'
>
> (a) When used in this act [6-2-1-1—6-2-1-53] the term 'person' or the term 'company' herein used interchangeably, means and includes any . . . municipal corporation or any other political subdivision of the state engaged in private or proprietary activities or business, . . ."

The question of jurisdiction therefore turns on I.A.A. being a "person" which in turn depends on a determination of the nature of the activities in which I.A.A. is engaged (proprietary or governmental).

The statute which authorized creation of the I.A.A. also spoke to the characterization of the authority's functions. IC 1971, 19-6-2-30 (Burns Code Ed.) reads as follows:

> "19-6-2-30 [14-1330]. Public necessity and benefits—General welfare.—The acquiring, establishment, construction, improvement, equipment and maintenance and the control and operation of airports and landing fields for aircraft under and pursuant to any of the provisions of this act [19-6-2-1—19-6-2-41] *shall be deemed and are hereby declared to be a governmental function of general public necessity and benefit,* and shall be for the use and general welfare of all people of the state of Indiana, as well as of the people residing in any such district. [Acts 1961, ch. 283, § 30, p. 656.]" (Emphasis added).

The above statute indicates a clear intent by the Legislature to declare that the municipal operation of an airport is a governmental function. By applying the clear meaning of the words of the statute, I.A.A. is not a "person" within the meaning of IC 1971, 6-2-1-1. Since I.A.A. is not a person it is not bound by the exclusive remedy provisions of IC 1971, 6-2-1-19 and the trial court possessed jurisdiction to hear the case.

## II. & III.

State next challenges the sufficiency of the evidence to support the findings of fact. The appellant also questions the correctness of the trial court's conclusions of law.

We deem it unnecessary to discuss either of the above allegations of error. When the Indiana Legislature enacted IC 1971, 19-6-2-30 (Burns Code Ed.) and declared airport authorities to be governmental functions it removed I.A.A. from within IC 1971, 6-2-1-1's definition of "person". Since I.A.A. is not a person, it can not be within the definition in IC 1971, 6-2-1-2 (Burns Code Ed.) of those to be taxed.

"6-2-1-2 [64-2602]. Levy of tax—Date.—There is hereby imposed a tax upon the receipt of gross income, measured by the amount or volume of gross income, and in the amount to be determined by the application of rates on such gross income as hereinafter provided. Such tax shall be levied upon the receipt of the entire gross income of *all persons* resident and/or domiciled in the state of Indiana, except as herein otherwise provided; . . ." (Emphasis added).

In light of the above holding, the findings of fact and conclusions of law questioned by appellants need not be considered as I.A.A. is not within the ambit of the Gross Income Tax statute.

No error having been demonstrated, the decsion of the trial court is affirmed.

Affirmed.

Robertson, C.J. and Lowdermilk, J., concur.

NOTE.—Reported at 362 N.E.2d 200.

### ON PETITION FOR REHEARING

LYBROOK, J.—Our original opinion on the merits of this case appears at 362 N.E.2d 200.

Appellants argue among other matters, in their petition for rehearing, that the farming operations should not have been included in the I.A.A.'s exemption from taxation. Without meeting this issue, we find it necessary to point out that the argument for taxing the farming operation was not seriously presented to either the trial court or this court prior to the petition for rehearing. It is axiomatic that we will not address issues raised for the first time on appeal, much less for the first time on petition for rehearing.

Since the sole issue of our previous decision dealt with the jurisdiction of the trial court, we must leave for another day and other forum, when properly raised, the question of the propriety of exempting the I.A.A.'s farming operation from the Indiana Gross Income Tax.

Rehearing denied.

Robertson, C.J. and Lowdermilk, J., concur.